UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

SAMANTHA MICHAEL and
CORY MICHAEL, individually
and on behalf of their minor children
B.M. and C.M.,

     Plaintiffs,

v.                                                                          Case No. 8:25-cv-3291-LSG

ACADEMY AT THE LAKES,

     Defendant.

_____/

## ORDER

     The defendant Academy at the Lakes moves to compel arbitration and dismiss the second amended complaint. Docs. 37, 38. In support, Academy at the Lakes attaches copies of primary and supplemental student enrollment agreements. Doc. 38 at 28–55. The plaintiffs Samantha and Cory Michael responded in opposition and with leave, Academy at the Lakes filed a reply. Doc. 40–43. For the reasons explained below, the motion to compel arbitration is granted-in-part and denied-in-part.[1]

## I.    BACKGROUND

     Samantha and Cory Michael are the mother and father of minor children B.M. and C.M. who attended Academy at the Lakes, which is a private school in

---

[1] The parties consent to the jurisdiction of a United States Magistrate Judge. Docs. 26–27.

Land O'Lakes, Florida. The Michaels sue the school in a five-count amended complaint alleging (1) violations of Section 504 of the Rehabilitation Act, 29 U.S.C. § 794; (2) violations of the Americans with Disabilities Act (the "ADA"), 42 U.S.C. § 12101, et seq.; (3) negligence; (4) breach of contract; and (5) invasion of privacy. Doc. 36. Specifically, the Michaels allege that during B.M. and C.M.'s attendance at Academy at the Lakes between 2021 and 2025, the school unlawfully denied accommodations for B.M.'s and C.M.'s documented diagnoses, disclosed private health records, and breached its contractual obligation to provide a safe and supportive learning environment. *See* Doc. 36, ¶¶ 16–41; Doc. 38 at 28–55.

During this period, the parties entered four Continuous Enrollment Agreements.[2] Doc. 38 at 28–30, 32–34, 36–41. Each Continuous Enrollment Agreement incorporates an Enrollment Agreement Supplement which the school issued to the parents annually. Doc. 38 at 29, 33, 37, 40 (declaring that the signing party "acknowledge[s] and accept[s] . . . the terms, conditions, policies, and procedures set out in the school handbooks and the annual Enrollment Agreement Supplement."). The Continuous Enrollment Agreement renewed annually unless a parent withdrew the student, the school dismissed the student, or a parent submitted an "Official Notification of Opt-Out" form before the school's deadline. Doc. 38 at 29, 33, 37, 40.

---

[2] Academy at the Lakes submits copies of the parties' enrollment agreements and opt-out forms; the Michaels, however, attach no contractual documents to their amended complaint or to their response in opposition to the motion to compel. *See* Docs. 36, 38, 40, 43.

2

The Enrollment Agreement Supplement "summarizes the agreement entered into by and between" the parties, and defines key terms, such as the parents' enrollment and tuition obligations and student withdrawal process. Doc. 38 at 43–52. Crucial to this dispute, the Enrollment Agreement Supplement includes a mandatory arbitration provision which says in part:

> [t]he Parent understands that the School has a system of alternative dispute resolution which involves binding arbitration to resolve all disputes which may arise out of the relationship between students, parents and the School. Because of the mutual benefits (such as reduced expense and increased efficiency) which private binding arbitration can provide, Parent agrees that any claim, dispute and/or controversy (including but not limited to, any contract claims, any statutory claims, including claims of discrimination and harassment under Florida or federal law, any claims under local, state, or federal ordinances, laws or regulations, and any common law claims) which would otherwise require or allow resort to any court or other governmental dispute resolution forum between Parent and the School (or its trustees, directors, officers, managers, employees, agents, and parties affiliated with it) or Student and the School arising from, related to or having any relationship in connection whatsoever with Parent's or Student's relationship as a student or parent or other association with the School, whether based on tort, contract, statutory, or equitable law, or otherwise, shall be submitted to and determined exclusively by binding arbitration under the Federal Arbitration Act, in conformity with the procedures of the Florida Arbitration Code Chapter 682.

Doc. 38 at 44, 46, 48, 50, 52. Importantly, the provision also says "I UNDERSTAND THAT THIS BINDING ARBITRATION PROVISION REQUIRES PARENT, STUDENT, AND THE SCHOOL TO GIVE UP RIGHTS TO TRIAL BY JURY." *Id.*

The Michaels executed the four Continuous Enrollment Agreements for the years of 2021 through 2025, and electronically initialed the accompanying

3

Enrollment Agreement Supplements. Doc. 38 at 28–30, 32–34, 36–41; Doc. 40 at 3, 5, 8, 9, 11. The Michaels electronically signed the first two Continuous Enrollment Agreements in December 2020 and February 2021. Doc. 38 at 28–30, 36–38. In February 2022, the Michaels submitted an opt-out form and withdrew one child from the school because of concerns over the school's lack of mental health protocols. Doc. 38 at 31. However, the Michaels re-enrolled the child and signed a new enrollment agreement in October 2022. Doc. 38 at 32–34. In July 2023, the Michaels executed a final enrollment agreement. Doc. 38 at 39–41. In May 2025, the Michaels submitted two final opt-out forms that withdrew B.M. and C.M. from the school. Doc. 38 at 35, 42.

The Michaels, individually and on behalf of their minor children, sued Academy at the Lakes on December 2, 2025, filed an amended complaint on December 17, 2025, and perfected service on March 5, 2026. Docs. 1, 7, 13. Academy at the Lakes appeared on March 31, 2026, requested an extension of time to respond to the complaint, and moved to dismiss on April 2, 2026. Docs. 16, 19–20. After I granted-in-part and denied-in-part the motion to dismiss, the Michaels filed a second amended complaint. Docs. 34, 36. Academy at the Lakes now moves to compel arbitration based on the parties' enrollment agreement. Doc. 37, 38. The Michaels oppose arbitration and argue that their claims are not arbitrable. Doc. 40.

4

## II.    DISCUSSION

### A. Standard of review

The Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1, *et seq.*, governs the validity, enforceability, and applicability of arbitration agreements. The FAA "strongly favors enforcing arbitration agreements." *Collado v. J. & G. Transp., Inc.*, 820 F.3d 1256, 1259 (11th Cir. 2016); *Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359, 1367 (11th Cir. 2005). "Section 2 of the FAA provides that "a written agreement to arbitrate a controversy arising out of that contract 'shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.'" *Walthour v. Chipio Windshield Repair, LLC*, 745 F.3d 1326, 1329 (11th Cir. 2014) (quoting 9 U.S.C. § 2). Section 4 of the FAA grants authority to compel arbitration on finding that "the making of the agreement for arbitration or the failure to comply therewith is not [a]n issue." *Orellana v. Roblox Corp.*, 769 F. Supp. 3d 1273, 1279 (M.D. Fla. 2025) (quoting 9 U.S.C. § 4).

The resolution of all doubts "'concerning the scope of arbitrable issues" must favor arbitration. *Attix v. Carrington Mortg. Servs., LLC*, 35 F.4th 1284, 1294 (11th Cir. 2022) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983)). A district court must "rigorously enforce" an arbitration agreement according to its terms. *Walthour*, 745 F.3d at 1329–30 (quoting *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 233 (2013)). If an arbitration agreement covers a disputed claim, Section 3 of the FAA requires a stay of proceedings provided that

"the issue involved in such suit or proceeding is referable to arbitration under the agreement" and "no grounds render [the agreement] invalid or unenforceable." *Attix*, 35 F.4th at 1294; *Hernandez v. Acosta Tractors Inc.*, 898 F.3d 1301, 1305 (11th Cir. 2018) ("Section 3 of the FAA requires courts to stay a case that is covered by a binding arbitration clause so it may proceed in arbitration."). A party seeking to avoid arbitration bears the burden of showing either that the agreement is invalid or that the claims are unsuitable for arbitration. *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 92 (2000).

**B. Academy at the Lakes is entitled to an order compelling arbitration.**

Academy at the Lakes moves to compel arbitration and argues that its agreement with the Michaels is valid, enforceable, and covers all asserted claims. Doc. 38 at 4–6, 8. Under the agreement's choice-of-law provision, the FAA and Florida law govern the contract. Doc. 38 at 44, ¶¶ 22, 24; *see Mazzoni Farms, Inc. v. E.I. DuPont De Nemours & Co.*, 761 So. 2d 306, 311 (Fla. 2000); *see also Default Proof Credit Card Sys., Inc. v. Friedland*, 992 So. 2d 442, 444 (Fla. 3d DCA 2008). Both the FAA and Florida law require considering "(1) whether a valid written agreement to arbitrate exists; (2) whether an arbitrable issue exists; and (3) whether the right to arbitrate was waived." *Senti v. Sanger Works Factory, Inc.*, No. 6-cv-1903, 2007 WL 1174076, at *2 (M.D. Fla. Apr. 18, 2007); *Seifert v. U.S. Home Corp.*, 750 So. 2d 633, 636 (Fla. 1999). Because Academy of the Lakes satisfies all three elements, Academy at the Lakes is entitled to an order compelling arbitration.

### i. A court, not an arbitrator, must decide questions of contract formation and scope.

Unless the parties "clearly and unmistakably" provide otherwise, a court must decide "gateway" questions of arbitrability. *See JPay, Inc. v. Kobel*, 904 F.3d 923, 929–30 (11th Cir. 2018). A contract makes a "clear and unmistakable" assignment if the contract incorporates institutional arbitral rules or contains clear language assigning threshold disputes of contract formation, interpretation, applicability, or enforceability to an arbitrator. *See id.* at 939 (collecting cases); *see also Terminix Int'l Co. v. Palmer Ranch Ltd. P'ship*, 432 F.3d 1327, 1331–33 (11th Cir. 2005).

Here, the Michaels argue that the agreement lacks a "clear and unmistakable" delegation provision. Doc. 40 at 12–14. Although the Michaels cite no legal authority to substantiate this assertion,[3] their argument has merit. The arbitration provision neither delegates issues of formation, enforceability, or arbitrability to the arbitrator nor incorporates institutional arbitral rules. *See* Doc. 38 at 44, 46, 48, 50, 52; *see JPay, Inc.*, 904 F.3d at 939; *cf. Terminix*, 432 F.3d at 1332 (finding delegation based on the incorporation of commercial arbitration rules). Importantly, the provision expressly incorporates Chapter 682, Florida Arbitration Code, which assigns threshold arbitrability determinations directly to a court. *See* FLA. STAT. § 682.02(2) ("The court shall decide whether an agreement to arbitrate exists or a

---

[3] As discussed below, the Michaels repeatedly fail to support their legal assertions with authority. Doc. 40 at 6–8, 9–14. Plaintiffs' counsel is warned that future non-compliance with court rules and briefing standards may result in sanctions, up to and including dismissal of this action. *See* FED. R. CIV. P. 11(b)(2), (c); FED. R. CIV. P. 41(b); Loc. R. 3.01(b); *see also* Doc. 34 at 15 n.2 (cautioning counsel against submitting fabricated, inaccurate, or mischaracterized case law).

controversy is subject to an agreement to arbitrate."). Because Academy at the Lakes fails to present clear and unmistakable evidence of delegation, I must resolve issues of contract formation, scope, and enforceability.

### ii. The agreement and its arbitration provision are valid and enforceable.

"Generally, when deciding whether the parties agreed under the FAA to arbitrate a certain matter, courts 'should apply ordinary state-law principles that govern the formation of contracts.'" *Senti*, 2007 WL 1174076, at \*5 (quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)). Under Florida law, the elements of a contract are "(1) offer; (2) acceptance; (3) consideration; and (4) sufficient specification of the essential terms." *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1272 (11th Cir. 2009) (citing *St. Joe Corp. v. McIver*, 875 So. 2d 375, 381 (Fla. 2004)).

Here, the record demonstrates clear offer, acceptance, consideration, and mutual assent to essential terms—including the binding arbitration provision. Academy at the Lakes established a valid offer when it provided the Continuous Enrollment Agreements and annual Enrollment Agreement Supplements to the Michaels. Doc. 38 at 28–30, 32–34, 36–41, 43–52. Each annual supplement describes the agreement's terms, such as tuition obligations, enrollment renewals, and the mandatory arbitration provision in paragraph twenty-four. Doc. 38 at 43–52; *see Dye v. Tamko Bldg. Prods., Inc.*, 908 F.3d 675, 680 (11th Cir. 2018) (explaining that an

offeror is the "master of the[ir] offer[]" and may prescribe the required terms and conduct for acceptance).

The Michaels accepted and assented to Academy at the Lakes' offer by electronically signing four Continuous Enrollment Agreements and enrolling B.M. and C.M. in the school. Doc. 38 at 28–30, 32–34, 36–41; *see CEFCO v. Odom*, 278 So. 3d 347, 351 (Fla. 1st DCA 2019) (holding that electronic signatures are valid, and execution or performance demonstrates assent). Although the Michaels withdrew one child by submitting an opt-out form in February 2022, the Michaels later accepted the terms again by signing a new agreement and re-enrolling the child in October 2022, before ultimately withdrawing both children in May 2025. Doc. 38 at 31–42. The record contains no other opt-out forms, and the Michaels offer no evidence to refute this acceptance.

Valid consideration and sufficiently specific terms also support the arbitration provision's enforceability. Paragraph twenty-four clearly and unambiguously outlines essential terms, including governing law, procedural arbitration rules, arbitrator qualifications, venue, and the broad scope of arbitrable claims. Doc. 38 at 44, 46, 48, 50, 52; *see Greenbrook NH, LLC v. Estate of Sayre*, 150 So. 3d 878, 881–82 (Fla. 2d DCA 2014) (enforcing an arbitration agreement that specifies basic procedures, arbitrator selection, and arbitrable issues). Additionally, the parties provided valid consideration by mutually agreeing to submit all statutory, contractual, and common-law claims to binding arbitration and waiving their right to a jury trial. *See Orellana*, 769 F. Supp. 3d at 1283; Doc. 38 at 44, 46, 48, 50, 52.

9

In opposition, the Michaels argue that the arbitration provision lacks mutual assent because (1) Academy at the Lakes excluded the provision from the Continuous Enrollment Agreements; (2) Academy at the Lakes embedded the provision in non-negotiable, electronic supplements without reasonable notice; and (3) a minor cannot assent to arbitration. Doc. 40 at 10–12. These arguments fail.

First, the arbitration provision binds the Michaels even though it appears in the annual Enrollment Agreement Supplements rather than the Continuous Enrollment Agreement. Under Florida law, express reference to and sufficient description of an external document incorporates its terms into the primary contract. *See OBS Co. v. Pace Constr. Corp.*, 558 So. 2d 404, 406 (Fla. 1990). Because the Continuous Enrollment Agreement expressly incorporates the annual Enrollment Agreement Supplements, the Michaels are bound by those supplemental terms. Doc. 38 at 28–30, 32–34, 36–41.

Second, Academy at the Lakes reasonably communicated the provision. The FAA requires only that an arbitration clause be in writing; the FAA requires no separate signature or special notice requirement. *See Caley*, 428 F.3d at 1368–69; *see also Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996) (invalidating state law which "condition[ed] the enforceability of arbitration agreement on compliance with special notice requirement"). Failure to read or understand the clause before electronically initialing each paragraph of the Enrollment Agreement Supplements does not defeat assent. *CEFCO*, 278 So. 3d at 351; Doc. 40 at 8, 11; *see e.g.*, Doc. 38

10

at 44 (concluding the arbitration provision with a capitalized sentence clearly notifying the parties that accepting arbitration waives their right to a jury trial).

Finally, a parent holds legal authority to bind a minor child to pre-dispute arbitration. *See Global Travel Mktg., Inc. v. Shea*, 908 So. 2d 392, 404–05 (Fla. 2005) (holding that a parent's execution of an arbitration agreement on behalf of a minor child binds the child to arbitrate all claims arising out of the contractual relationship). Thus, the arbitration provision binds both the Michaels and their minor children. Doc. 40 at 12.

### iii.   The claims fall within the scope of the arbitration provision.

"Whether a claim falls within the scope of an arbitration agreement turns on the factual allegations in the complaint rather than the legal causes of action asserted." *Gregory v. Electro-Mech. Corp.*, 83 F.3d 382, 384 (11th Cir. 1996). "Doubts should be resolved in favor of coverage." *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986). If the factual basis of the Michaels' claims "arise out of" their children's relationship with the school, the claim falls within the scope of the arbitration provision.

Here, the Michaels' claims fall within the scope of the arbitration provision, which is broad and covers "all disputes which may arise out of the relationship between students, parents, and the School." Doc. 38 at 44, ¶ 24. The Michaels sue based on the school's alleged statutory violations, tortious conduct, and contractual breaches during their children's enrollment and instruction. *See* Doc. 36. Thus, the claims arise out of the Michaels' children's relationship with Academy at the Lakes.

11

Although the Michaels raise four arguments challenging scope, the Michaels waive these arguments by failing to support them with legal authority. *Singh v. U.S. Atty. Gen.*, 561 F.3d 1275, 1278 (11th Cir. 2009). Nevertheless, even on the merits, each argument fails.

The Michaels first argue that because the arbitration provision appears in the annual Enrollment Agreement Supplements rather than the Continuous Enrollment Agreement, the provision's reach "applies only to disputes arising from the specific school year covered by each Supplement." *See* Doc. 40 at 6–7. However, the provision broadly governs all disputes "arising from, related to or having any relationship in connection whatsoever with Parent's or Student's relationship" with the school, and contains no time limit restricting coverage to a specific period. Doc. 38 at 44, 46, 48, 50, 52; *see BallenIsles Country Club, Inc. v. Dexter Realty*, 24 So. 3d 649, 653 (Fla. 4th DCA 2009). Thus, the duty to arbitrate is presumed to extend beyond a single academic year.

The Michaels next argue that withdrawal and opt-out forms terminated the enrollment agreements and extinguished their duty to arbitrate post-withdrawal claims. *See* Doc. 40 at 6. However, absent express negation in the contract, an arbitration provision may survive termination. *Barnett v. Fitness Int'l, LLC*, No. 20-60658-CIV, 2020 WL 6078223, at *4–5 (S.D. Fla. Aug. 10, 2020), *report and recommendation adopted*, 2020 WL 13566038 (S.D. Fla. Aug. 26, 2020); *Montero v. Carnival Corp.*, 523 F. App'x 623, 626–27 (11th Cir. 2013). Because the provision contains no negation language and does not exclude post-withdrawal disputes, the

12

provision survives termination and governs the Michaels' claims. *Barnett*, 2020 WL 6078223, at *5 (explaining that an arbitration provision requires no "savings clause" to survive contract termination); *see e.g.*, Doc. 36, ¶¶ 20, 39–41, 51, 59–63, 83–88; Doc. 40 at 6.

The Michaels also suggest that their statutory and tort claims lack a sufficient relationship to the parties' enrollment agreements. *See* Doc. 40 at 10 (explaining that "certain allegations do not arise from the educational relationship"). A claim is subject to arbitration if the claim shares a "significant relationship" with the contract or relationship. *See Seifert*, 750 So. 2d at 638; *Dewees v. Johnson*, 329 So. 3d 765, 770 (Fla. 4th DCA 2021) (finding no contractual relationship for a claim alleging a breach of a general common law duty owed to the public, rather than a unique duty created by the contract). Because the duties Academy at the Lakes allegedly breached exist solely as a result of the parties' educational relationship, the statutory and tort claims share a significant relationship with the enrollment agreements and are subject to arbitration. *See* Doc. 36, ¶¶ 17–41.

Finally, the Michaels assert that claims under Title III of the ADA and Section 504 of the Rehabilitation Act are non-arbitrable. Doc. 40 at 7–8. Yet, neither statute prohibits arbitration, and the ADA expressly encourages alternative dispute resolution, including arbitration. 42 U.S.C. § 12212; 29 U.S.C. § 794(a); *see also Bercovitch v. Baldwin Sch., Inc.*, 133 F.3d 141, 148–50 (1st Cir. 1998) (explaining that ADA and Section 504 claims are subject to arbitration).

### iv.  Academy at the Lakes has not waived its right to arbitration.

A party waives its right to arbitrate if the party intentionally relinquishes or abandons a known right. *See Morgan v. Sundance, Inc.*, 596 U.S. 411, 417–19 (2022). "Waiver may be express or may be implied from conduct." *Air Prods. & Chems., Inc. v. La. Land & Expl. Co.*, 867 F.2d 1376, 1379 (11th Cir. 1989). To determine implied waiver, I must review the totality of circumstances to decide whether Academy at the Lakes acted inconsistently with its right to arbitration; inconsistent conduct includes actively participating in litigation or defending the case on the merits. *See Adams v. Lashify, Inc.*, 689 F. Supp. 3d 1146, 1158–59 (M.D. Fla. 2023).

Here, Academy at the Lakes took no action inconsistent with its right to arbitration. Although the Michaels argue that Academy at the Lakes litigated this case for six months "without ever mentioning arbitration[,]" the record shows otherwise. Doc. 40 at 4. Academy at the Lakes first appeared on March 31, 2026, after receiving service earlier that month, and moved to compel arbitration three months later. Docs. 16, 37–38. During that time, Academy at the Lakes moved to dismiss the deficient pleadings, and filed no answer to the second amended complaint. Doc. 20. Instead, the school promptly asserted its right to arbitration once the school discovered the provision's applicability. Doc. 38 at 7.

Under the totality of the circumstances, Academy at the Lakes' conduct shows no intentional relinquishment of a known right to arbitrate. *Cf. Green Tree Servicing, LLC v. McLeod*, 15 So. 3d 682, 687–88 (Fla. 2d DCA 2009) (finding waiver when a party answered, moved for summary judgment, and conducted discovery on the

14

merits); *Gaudreau v. My Pillow, Inc.*, No. 21-CV-1899, 2022 WL 3098950, at \*8 (M.D. Fla. July 1, 2022) (finding waiver when the defendant litigated for eight months and answered two complaints before seeking arbitration). Thus, no implicit waiver occurred.

### v.  The arbitration provision is not unconscionable.

Under Florida law and the FAA, the Michaels must establish both procedural and substantive unconscionability to invalidate an arbitration clause. *Basulto v. Hialeah Auto.*, 141 So. 3d 1145, 1157–59 (Fla. 2014). The Michaels satisfy neither requirement.[4]

The Michaels argue that the arbitration provision is procedurally unconscionable because the provision was presented as a non-negotiable, "take-it-or-leave-it" condition of enrollment, and therefore, operates as an adhesion contract. Doc. 40 at 8–9. An adhesion contract alone, however, does not render an arbitration provision unenforceable. *VoiceStream Wireless Corp. v. U.S. Commc'ns, Inc.*, 912 So. 2d 34, 39–40 (Fla. 4th DCA 2005). Instead, procedural unconscionability requires a showing that the complaining party lacked a "meaningful choice" during contract formation—such as when a contract drafter hides terms in a "maze of fine print" or uses "deceptive sales practices[.]" *Basulto*, 141 So. 3d at 1157 n.3, 1160; *Gainesville Health Care Ctr., Inc. v. Weston*, 857 So. 2d 278, 284–85 (Fla. 1st DCA 2003). A party

---

[4] This section omits the Michaels' repetitive arguments about continuous document incorporation, lack of mutuality or consideration, and alleged vagueness or overbreadth. Doc. 40 at 8–9. Sections II.B.ii. and II.B.iii. previously addressed and resolved those issues.

15

possesses a meaningful choice if they remain free to obtain alternative services and are not forced to sign. *VoiceStream*, 912 So. 2d at 40; *Weston*, 857 So. 2d at 285.

Here, the Michaels demonstrate no procedural unconscionability. The Michaels allege no deceptive practice or active effort by Academy at the Lakes to conceal the terms of the annual Enrollment Agreement Supplement; the arbitration provision appears in the same size font as the surrounding text; and the Michaels remained free to enroll their children in other schools. Doc. 40 at 8, 11; Doc. 38 at 42–52; *Weston*, 857 So. 2d at 287; *Murphy v. Courtesy Ford, L.L.C.*, 944 So. 2d 1131, 1134–35 (Fla. 3d DCA 2006). The Michaels even exercised their right to make a meaningful choice for alternative services by signing an opt-out form in February 2022 to unenroll one of their children from the school. Doc. 38 at 31. Furthermore, the Michaels' choice to initial each paragraph of the annual supplements demonstrates voluntary execution rather than coercion. Doc. 40 at 8, 11; *see Petersen v. Fla. Bar*, 720 F. Supp. 2d 1351, 1360–61 (M.D. Fla. 2010).

The Michaels' substantive challenges are equally unpersuasive. Substantive unconscionability requires terms so "outrageously unfair" that they "shock the judicial conscience." *Weston*, 857 So. 2d at 284–85. First, requiring arbitration before a neutral, retired Florida Circuit Judge in Pasco County—the local forum where the school operates—is a presumptively valid forum-selection term, and the Michaels fail to show that the forum presents an oppressive burden. Doc. 36, ¶ 1; Doc. 38 at 44, 46, 48, 50, 52; *see Benefit Ass'n Int'l, Inc. v. Mount Sinai Comprehensive Cancer Ctr.*, 816 So. 2d 164, 168–69 (Fla. 3d DCA 2002) (explaining that forum-selection terms in

16

arbitration agreements are presumptively valid unless shown to be unreasonable, unjust, or so gravely inconvenient as to deprive a party of a forum). Preferring "a more convenient" forum does not satisfy the standard. Doc. 40 at 8.

Second, waiving a jury trial is an inherent feature of arbitration, not an unconscionable concession. *See Hobby Lobby Stores, Inc. v. Cole*, 287 So. 3d 1272, 1276 (Fla. 1st DCA 2020); *see also Farnham v. Grindr, LLC*, No. 25-CV-1260, 2025 WL 3062698, at *5 (M.D. Fla. Nov. 3, 2025); Doc. 40 at 8. Likewise, procedural and discovery limits do not render an agreement unconscionable; in fact, exchanging formal litigation tools for speed, simplicity, and informality is one of the benefits of arbitration. *See Caley*, 428 F.3d at 1378; Doc. 40 at 8.

Third, the provision's broad coverage of "any statutory claim" is fully enforceable because the provision mandates that dispute resolution "shall be based solely upon the law governing the claims and defenses pleaded," which preserves all substantive remedies. Doc. 38 at 44, 46, 48, 50, 52; Doc. 40 at 8. Therefore, because the agreement neither restricts statutory rights nor imposes one-sided obligations, the agreement comports with public policy. *See Shotts v. OP Winter Haven, Inc.*, 86 So. 3d 456, 474 (Fla. 2011).

### III.    CONCLUSION

Accordingly, Academy at the Lakes' motion to compel, Doc. 38, is **GRANTED-IN-PART** and **DENIED-IN-PART**. Specifically, the request to compel arbitration is granted, but the request to dismiss the complaint is denied without prejudice. Doc. 38. Controlling precedent supports a stay rather than a dismissal.

*Milestone v. Citrus Specialty Grp., Inc.*, No. 19-CV-2341, 2019 WL 5887179, at *3 (M.D. Fla. Nov. 12, 2019) (citing *Bender v. A.G. Edwards & Sons, Inc.*, 971 F.2d 698, 699 (11th Cir. 1992)). Accordingly, this case is **STAYED** and the parties are directed to proceed to arbitration. The Clerk is directed to terminate all pending motions and administratively close this case.

Furthermore, the parties must file a joint status report every 120 days, with the first report due **December 8, 2026**. Each report must include on the cover page the next reporting deadline. If arbitration is not completed by December 8, 2026, the parties must file a joint status report beginning on that day and continuing every four months until arbitration is completed. Failure to file a required joint status report may result in the Michaels receiving an order to show cause that can result in dismissal. Loc. R. 3.10. The parties must notify me **no later than thirty days** after the arbitrator issues the final arbitration award.

**ORDERED** in Tampa, Florida, on this 10th day of August, 2026.

LINDSAY S. GRIFFIN
United States Magistrate Judge

18